### No. 10,176.

### STATE EX REL. ISAAC W. PATTON, REGISTER, VS. W. T. HOUSTON, JUDGE.

In order to invoke the exercise of the supervisory jurisdiction of this Court under the writs of certiorari and prohibition, relator must establish one of three things, viz: 1st. That the proceedings are infected with some fatal irregularity; or 2d. That the jurisdiction of the cause did not belong to the court which assumed it, but to a different court; or 3d. That the cause is of a nature jurisdiction of which is denied to any court, because not within the limits of judicial power.

Constitutional executive officers are not exempt from judicial authority to compel them to perform specific duties imposed upon them by law.

Officers charged with the conduct of elections and with the ascertainment and promulgation of the results thereof, may be compelled by mandamus proceedings to perform specific ministerial duties imposed on them by law.

Where the statute requires the registrar to appoint commissioners ten days, and to publish them six days, before the election, if he has violated his legal duty in the selection of such commissioners, parties interested are not precluded from judicial remedy because he has so acted. They could not proceed before he had acted, and if denied the right to proceed afterward this would be a complete denial of right. The object of the law in requiring action a certain time before the election was to afford an opportunity to correct any violation of duty which he might commit.

The questions as to whether the law imposed the duty alleged, whether the duty was ministerial or discretionary in its character, and whether the defendant had violated his duty, are mixed questions of law and fact belonging exclusively to the merits of the cause and constituting, indeed, the entire merits thereof, and the court being seized with jurisdiction of the case was necessarily invested with full power to consider and determine them. Mere error in the judgment, even if it exists, could only be corrected by us in the exercise of a jurisdiction purely appellate, and can form no foundation for invoking our supervisory jurisdiction.

APPLICATION for Certiorari and Prohibition.

*E. D. White, E. H. McCaleb* and *W. H. Rogers* for Relator.

The opinion of the Court was delivered by

FENNER, J. Relator invokes the exercise of our supervisory jurisdiction, by means of the extraordinary writs of prohibition and certiorari, to declare the nullity of a certain judgment rendered by the respondent judge, and to prohibit him from further proceeding in execution thereof.

The judgment complained of was rendered in a mandamus proceeding brought before the Civil District Court by Henry C. Warmoth and other Republican candidates for offices of the State which are to be filled at an election to be held on April 17th, wherein they allege that by virtue of Sections 13 and 15 of Act No. 58 of 1877, it was made the duty of the Registrar of Voters for the parish of Orleans to appoint

for each voting precinct three commissioners of election, to be assisted by a clerk of election, said commissioners and clerk to be selected from opposing political parties, such appointments to be made ten days before the election and to be published at least six days before the election; that more than ten days before the election representatives of the Republican party had requested said registrar to comply with his said duty by appointing a commissioner or commissioners selected from the Republican party, and had·furnished him with names of qualified Republicans from which to make such selections; but that the said registrar had failed to perform the duty imposed upon him by law, and had violated said duty by appointing all the commissioners at said election from members of the Democratic party. On appropriate averments of the absence of all other adequate remedy, they asked for a writ of mandamus commanding and compelling him to appoint a commissioner at each precinct selected from the Republican party.

In answer to an order to show cause why the peremptory mandamus should not issue, the registrar filed the following defenses:

1st.   An exception to the jurisdiction of the court;

2d.   An exception of no cause of action;

3d.   That in the appointment of commissioners he exercised a discretion legally vested in him by the statute and not subject to judicial control;

4th.   That, in his said appointments, he had actually complied with all requirements of the law.

The case went to trial on these issues, evidence was heard, and the court, in an elaborate opinion, overruled all the defenses, and rendered judgment making the mandamus peremptory.

It is to be borne in mind that the proceeding now before us is not an appeal, and vests us with no appellate jurisdiction over the case, under which we may review questions merely affecting the correctness of the judgment.

The application invokes the exercise of our supervisory jurisdiction exclusively, and in considering it we must be guided and controlled by those rules and limitations which have been·formulated and fixed by the laws of the State and the jurisprudence of this Court.

To obtain the relief sought herein under the writs of certiorari and prohibition, these rules imperatively require that relator shall establish one of three things, viz: either 1st, that the proceedings are infected with some fatal irregularity rendering them absolutely void, such as want of citation or refusal of a hearing, and the like; or 2d, that the jurisdiction of the cause did not belong to the court which assumed

it, but to a different court; or 3d, that the cause is of a nature jurisdiction of which is denied to any court, because not within the limits of judiciary power.

It is not pretended that either of the two first grounds of relief is presented in this case. The perfect regularity of the proceedings in the court below is not questioned. There is no complaint that the court has assumed a jurisdiction which is vested by law in some other court. On the contrary, it will be admitted that, if any court is vested with jurisdiction over the persons and the subject-matter of the controversy, it is, and must be, the Civil District Court.

It follows, therefore, that the whole contention of relator is narrowed down to the proposition that the proceedings concern a subject-matter, the power to consider and determine which lies outside of the functions and powers of the judiciary.

Analyzing as completely as we can the positions of relator, we find this contention to be based on the following grounds, viz:

1st. That relator is a constitutional officer belonging to the executive department of the government, and not subject to judicial control in the execution of the functions of his office. This is answered by the very language of the Code of Practice touching the writ of mandamus, Art. 834 of which declares: "It may be directed to public officers to compel them to fulfil any of the duties attached to their office, or which may be legally required of them." There is no exception of constitutional executive officers, and our Reports are full of cases in which such jurisdiction has been exercised over the Auditor, the Treasurer, the Secretary of State, and other executive officers.

2d. That as the subject-matter of the case is one touching the conduct of elections, such matter does not lie within judicial cognizance. There is no authority and no reason to support this broad proposition. It is true that it has been held by this Court that in the absence of special statutory authorization courts are without jurisdiction, *ratione materiæ*, to entertain cases of contested election. State vs. Judge, 13 Ann. 89.

This is a rule widely recognized and generally prevalent, and resting on peculiar principles; but it has never been extended so far as to exempt officers charged with the conduct of elections and with the ascertainment and promulgation of the results thereof from judicial control to require them to perform the specific duties imposed upon them by law.

Thus says Mr. High, under the full sanction of authority: "Notwithstanding the rule denying the relief by mandamus to compel

admission to a disputed office or to determine the title thereto, there are certain incidents connected with the question of title and election to public offices, which, from their nature, involve the exercise of merely ministerial powers, and are hence properly subject to control by mandamus. Among those incidents are the canvassing of election returns, the issuing of certificates of election to the persons entitled thereto, and the issuing of a commission to a claimant duly elected." High Ext. Legal Rem., § 55; State ex rel. Barbin vs. Secretary, 32 Ann. 579.

So says High : "Mandamus has also been held to be an appropriate remedy to protect the right of a voter to registration of his name upon the poll-list. And a registering officer, appointed under the laws of the State for this purpose, may be compelled by the writ to register the names of voters applying for registration and properly entitled to vote." High, id. § 65.

Of course, in all such cases, the propriety of the writ will depend upon the distinction between duties of a purely ministerial nature involving the exercise of no official discretion, and those which are *quasi*-judicial and involve the exercise of such discretion.

It would, indeed, be monstrous if officers charged by the Legislative will, with specific duties intended for the protection of the electoral right of the citizen and for the security of fair elections, could disregard and violate them with impunity. No authority is or can be cited exempting public officers charged by law with specific ministerial duties in election matters from the same judicial control which is exercised over all other officers of the State with reference to similar duties,

3. It is claimed that the statute required that the appointment of commissioners should be made ten days before the election, and published at least six days before the election ; that having so made and published his appointments, his power was exhausted, and courts had no power to compel him to undo or to correct what had been done. We are strongly doubtful whether this ground does not go exclusively to the merits of the case, and is not, therefore, beyond our review in this case. But, at all events, it is entirely without merit.

The right to invoke the aid of courts to compel the performance of this alleged duty could not arise until the relator was actually in default. This is elementary, and is strongly announced by Mr. High, as follows : "Mandamus is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ will refuse to perform

their duties when the proper time arrives. It is, therefore, incumbent on the relator to show an actual omission on the part of the respondent to perform the required act, and since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time." High, Ex. L. R. § 12.

Relators in the case below were not in position to exercise their right until, by the action of the Registrar, he placed himself in default by violating his alleged duty. A legal right cannot be paralyzed by such a paradox which says to the person injured: "You cannot proceed before the Registrar acts, because it is too soon ; and you cannot proceed after he has acted, because it is too late." On the contrary, we are satisfied that the very object of the law in requiring the Registrar to act in a certain period preceding the election was to afford parties an opportunity to correct any violation of his duty which he might commit.

4. The final grounds are that the law relied on did not impose on the Registrar the specific duty, the performance of which was sought to be enforced by mandamus, and that the duty imposed with reference to the appointment of commissioners was of a character involving the exercise of official discretion, and that, having exercised such discretion and discharged his duty in accordance therewith, his action is not subject to judicial control by mandamus.

It is obvious that these questions belong exclusively to the merits of the cause. In every mandamus proceeding brought against public officers, in the language of the Code of Practice, " to compel them to fulfil the duties attached to their office, or which may be legally required of them," the questions necessarily arise, Is the duty alleged imposed by the law? Has the officer violated the duty? Is the duty of a character authorizing the court to enforce it by mandamus? The solution of these questions constitutes the entire merits of every such proceeding and the sole judicial function involved therein. The court seized with jurisdiction of such a controversy is necessarily invested with full power to examine and determine these questions of mixed law and fact, the determination of which is a necessary condition precedent to the rendition of any judgment whatever. The claim that error in such determination entails the nullity of the proceeding and judgment, has no more foundation than a claim that like error would strike any other judgment with nullity. We are clearly precluded from considering such questions in this proceeding. As we said in a former case and have often reiterated : " The Constitution intended that our supervisory jurisdiction should be distinct, in

nature as well as in name, from our appellate jurisdiction. The former was intended simply to enable us to compel inferior courts to perform their functions, to prevent them from exceeding the bounds of their jurisdiction, and to enforce the observance of that regularity in their proceedings, which is essential to fairness in the conduct of contradictory litigation. Mere error in the decision of questions properly submitted to their determination and regularly determined, can only be corrected in the exercise of a jurisdiction purely appellate." State ex rel. Wintz vs. Judge, 32 Ann. 1225.

Finding, in this case, that the respondent judge had jurisdiction of the cause, that he was vested with judicial power to hear and decide it, and that his proceedings have been, in all respects, regular, there is no occasion or room for the exercise of our supervisory jurisdiction,

It is, therefore, ordered that the applications for writs of *certiorari* and prohibition be denied, at relator's cost.