ROBERT SUTTON AND SUE SUTTON v. J. B. FIGGATT, INDIVIDUALLY AND AS REPRESENTATIVE OF THE CLASS OF MAGISTRATES FROM TIME TO TIME OF MECKLENBURG COUNTY, NORTH CAROLINA

No. 70

(Filed 15 December 1971)

1. Injunctions § 3; Mandamus § 1— mandatory injunction — mandamus

In a suit against a public official or board, there is no practical difference in the results to be obtained by the common-law remedy of mandamus and the equitable remedy of mandatory injunction.

2. Mandamus § 1— nature of the writ

The writ of mandamus is an order from a court of competent jurisdiction to a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law.

3. Mandamus § 1— personal action

The writ of mandamus is a personal action based upon allegation and proof that the defendant has neglected or refused to perform a personal duty which the plaintiff has a clear legal right to have him perform.

4. Mandamus § 2— discretionary duties

In a case involving the exercise of discretion, mandamus lies to compel action by a public official but not to dictate his decision unless there has been a clear abuse of discretion.

5. Mandamus § 1— nature of the writ — willingness of defendant to perform duty — past or future wrong

The courts of this State have no discretion to refuse the writ of mandamus when it is sought to enforce a clear legal right to which it is appropriate, but the writ will not issue to compel the performance of an act which a defendant shows a willingness to perform without coercion or to redress a past wrong or to prevent a future legal injury.

---

Sutton v. Figgatt

---

6. **Mandamus § 2— application for warrant — refusal of magistrate to examine plaintiffs — magistrate's present readiness to examine plaintiffs**

Plaintiffs were not entitled to a writ of mandamus compelling defendant magistrate to examine plaintiffs as required by G.S. 15-19 upon their application for a warrant against two deputy sheriffs, where defendant had on one occasion refused to examine plaintiffs but announced in open court that if plaintiffs would reapply to him for a warrant he would examine them upon oath, and, while the trial judge held his decision in abeyance, defendant waited from three to five hours, ready, able and willing to examine plaintiffs pursuant to G.S. 15-19.

7. **Mandamus § 1— nature of the writ**

The court will not issue the extraordinary writ of mandamus merely to enable a party to prove a point or to excoriate a public official for a mistake he stands ready to correct.

APPEAL by plaintiffs from *Blount, S. J.,* 20 April 1971 Schedule "A" Session of MECKLENBURG, transferred from the Court of Appeals for initial appellate review by the Supreme Court under general order of 31 July 1970, entered pursuant to G.S. 7A-31(b) (4).

Action for mandamus.

Defendant is a magistrate of Mecklenburg County, appointed under the provisions of G.S. 7A-170 to -176 (1969). Plaintiffs, husband and wife and adult citizens of Mecklenburg County, allege:

On 2 April 1971 there were pending against plaintiffs in the District Court criminal charges preferred by Messrs. Arrington and Metcalf, deputy sheriffs of Mecklenburg County. These charges grew out of incidents occurring on 29 March 1971, and the cases were set for trial on 13 April 1971. Plaintiffs went to defendant's office on 2 April 1971, and, under the provisions of G.S. 15-18 to -20 (1965) as amended (Supp. 1969) applied to him for warrants charging Messrs. Arrington and Metcalf with assaulting plaintiffs on 29 March 1971. Upon inquiry defendant ascertained that "the incidents of which plaintiffs then sought to complain" grew out of the occurrences on 29 March 1971 for which the two deputies had caused plaintiffs to be arrested. Defendant declined to examine plaintiffs on oath as required by G.S. 15-19. He said that he had been instructed by Chief District Court Judge Abernathy not to issue "cross warrants," and ad-

vised plaintiffs to see the judge if they wanted a warrant against the officers.

Plaintiffs further allege, upon information and belief, that all magistrates in Mecklenburg County "routinely disclaim authority to examine under oath and issue warrants in cases wherein private citizens wish to charge law enforcement officials with criminal offenses." Plaintiffs pray that "defendant be mandatorily enjoined" to exercise the duties imposed upon him by law and that the court enter judgment declaring illegal the "pattern, policy and practice of which complaint is made."

Based on these allegations plaintiffs filed a motion for a preliminary injunction. This motion was heard on 20 April 1971, at which time plaintiffs examined defendant as an adverse witness. Defendant testified that when plaintiffs applied to him for a warrant for the arrest of Deputies Arrington and Metcalf, he knew that the two officers had charged the male plaintiff with resisting arrest and the *femme* plaintiff with assaulting the officers; that he told plaintiffs he would not issue a cross warrant without first talking with Judge Abernathy; that he suggested they themselves talk with the judge and thought they intended to do so. The *femme* plaintiff testified that she did not check with Judge Abernathy nor with any other magistrate. Plaintiffs' counsel, George S. Daly, Jr., gave testimony in substantial accord with that of defendant. No other evidence was offered by the parties.

At the conclusion of the evidence Judge Blount examined defendant, who informed the court that his refusal to examine plaintiffs on 2 April 1971 was "a temporary refusal" until he could get "a little more knowledge and information." He stated that if plaintiffs would reapply to him for a warrant he would comply with his statutory duty and examine them upon oath. Whereupon Judge Blount held his decision in abeyance for three hours and directed parties and counsel to imparl during the interim and attempt "to clear the matter up." Defendant remained available, ready to examine plaintiffs upon their application for a warrant. They, however, left the courthouse.

At 5:00 p.m. plaintiffs' counsel advised the court that their clients had made no attempt to obtain a warrant from defendant, or any other magistrate, and tendered to Judge Blount a proposed order "allowing the preliminary injunctive relief previ-

ously requested." Counsel argued that because defendant had once refused to examine plaintiffs they were entitled to have the court issue a writ of mandamus coercing defendant to conduct the examination specified in G.S. 15-19. Judge Blount declined to sign the tendered order. Instead, he found, *inter alia,* that defendant's failure to examine plaintiffs on 2 April 1971 "was the result of a mistaken idea as to the procedures to be followed by defendant"; that, so far as the evidence disclosed, the episode involving plaintiffs was an isolated event and there existed no illegal policy, pattern or practice which would prevent defendant or any other magistrate in Mecklenburg County from examining plaintiffs upon their application for a warrant; and that "there exists no willful or continuing refusal" by defendant to examine plaintiffs. Whereupon, he entered judgment denying plaintiffs' motion for "a preliminary injunction." The denial was without prejudice to plaintiffs' right to move the court "for reconsideration in the event they shall not be seasonably examined upon their application for the same to defendant or another magistrate of Mecklenburg County."

From this order plaintiffs appealed.

*W. Thomas Ray for plaintiff-appellants.*

*Attorney General Morgan and Staff Attorney League for defendant-appellee.*

SHARP, Justice.

[1] Although plaintiffs ask the court for a mandatory injunction directed to defendant Figgatt, and for a declaratory judgment designed for the enlightenment of the twenty-one magistrates of Mecklenburg County, they have alleged a cause of action for a writ of mandamus. However, in this State, where the court exercises both legal and equitable jurisdiction, in a suit against a public official or board there is no practical difference in the results to be obtained by the common-law remedy of mandamus and the equitable remedy of mandatory injunction. *Safrit v. Costlow,* 270 N.C. 680, 155 S.E. 2d 252; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885; *Williamston v. R. R.,* 236 N.C. 271, 72 S.E. 2d 609; *Hospital v. Wilmington,* 235 N.C. 597, 70 S.E. 2d 833; *Telephone Co. v. Telephone Co.,* 159 N.C. 9, 74 S.E. 636.

[2-4]  The writ of mandamus is an order from a court of competent jurisdiction to a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law. *Nebel v. Nebel,* 241 N.C. 491, 85 S.E. 2d 876; *Hospital v. Joint Committee,* 234 N.C. 673, 68 S.E. 2d 862; *Steele v. Cotton Mills,* 231 N.C. 636, 58 S.E. 2d 620; *Hickory v. Catawba County* and *School District v. Catawba County,* 206 N.C. 165, 173 S.E. 56. It is an extraordinary remedy which the court will grant only in case of necessity. *Edgerton v. Kirby,* 156 N.C. 347, 72 S.E. 365. The writ is employed as a remedy for inaction on the part of the particular official to whom it is directed. It is, therefore, a personal action based upon allegation and proof that the defendant has neglected or refused to perform a personal duty which the plaintiff has a clear legal right to have him perform. 52 Am. Jur. 2d *Mandamus* § 8, 9 (1970); 55 C.J.S. *Mandamus* § 2a (1948). In a case involving the exercise of discretion, mandamus lies to compel action by a public official but not to dictate his decision unless there has been a clear abuse of discretion. *Hospital v. Joint Committee, supra; Harris v. Board of Education,* 216 N.C. 147, 4 S.E. 2d 328; *Edgerton v. Kirby, supra.*

[5]  The courts of this State have no discretion to refuse the writ when it is sought to enforce a clear legal right to which it is appropriate, but it is well settled that the writ will not issue to compel the performance of an act which a defendant shows a willingness to perform without coercion. *White v. Board of Appeals,* 45 Ill. 2d 378, 259 N.E. 2d 51 (1970); *Hutson v. Lovett,* 305 S.W. 2d 524 (1957); *Lane v. Ross,* 151 Tex. 268, 249 S.W. 2d 591 (1952); *State v. O'Brien,* 170 Tenn. 435, 95 S.W. 2d 921 (1936); *State v. Sewer Dist.,* 332 Mo. 965, 61 S.W. 2d 724 (1933); 52 Am. Jur. 2d *Mandamus* § 89 (1970); 55 C.J.S. *Mandamus* § 10b (1948). Furthermore, it is not the office of mandamus to redress a past wrong or to prevent a future legal injury. *Steele v. Cotton Mills, supra; Dry v. Drainage Commissioners,* 218 N.C. 356, 11 S.E. 2d 143; *Casualty Company v. Comrs. of Saluda,* 214 N.C. 235, 199 S.E. 7.

The following statement by the Supreme Court of Illinois in *People v. Dunne,* 258 Ill. 441, 447, 101 N.E. 560, 562, is applicable here: "If it is the duty of the defendants to do the acts sought to be coerced by the writ, such acts would not be any more valid or legal if done under the command of the court. The office of the writ is to compel action by the unwilling. . . .

The writ will not issue to compel the doing of an act which the person sought to be coerced admits on the record he is willing to do without coercion."

[6] Applying the foregoing principle to the facts of this case, it is quite clear that plaintiffs are not entitled to the writ of mandamus. On 20 April 1971 Magistrate Figgatt waited from three to five hours, ready, able, and willing to accord plaintiffs their legal rights under G.S. 15-19. In open court he had announced his readiness to examine plaintiffs under oath with reference to their complaints against Messrs. Arrington and Metcalf. Had plaintiffs desired to pursue their alleged purpose to obtain warrants for the arrest of these two deputies for assaulting them on 29 March 1971, the opportunity was available. A warrant would issue, however, only if it appeared to the magistrate from his examination of plaintiffs that the officers had committed a criminal offense. G.S. 15-20.

[7] Plaintiffs contend (1) that "[t]his is a classic case of justice delayed, justice denied"; and (2) that if the writ of mandamus is not issued plaintiffs will suffer "irreparable loss and injury" by the denial of "clear legal rights." However, plaintiffs' election to appeal Judge Blount's order rather than to apply to defendant, or make complaint to some other magistrate, impugns and defeats the contentions they have stated. In April they could have had for the asking the only relief to be obtained by appeal. It suffices to say that the court will not issue the extraordinary writ of mandamus merely to enable a party to prove a point or to excoriate a public official for a mistake he stands ready to correct.

As recited in Judge Blount's findings of fact, plaintiffs offered no evidence to sustain their allegation that defendant Figgatt's initial refusal to examine plaintiffs was the result of "an illegal policy, pattern and practice" adopted by all magistrates in Mecklenburg County. Judge Blount acted correctly in treating this action as one against defendant alone and in refusing to declare a right about which there was no real existing controversy. *Angell v. Raleigh*, 267 N.C. 387, 148 S.E. 2d 233.

In the hearing below we find no error. The judgment of Judge Blount is in all respects

Affirmed.