Vance Roy **CLARK**, Plaintiff–Appellant,

v.

Michael **GROOSE**, George Adams, Gerald Bommell, James Eberle, John Sydow, Donald Kempker, Petters, Stanley Chris Swicord, Defendants–Appellees,

John Doe, Defendant.

No. 94–1174.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1994.

Decided Oct. 5, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 14, 1994.

Chuck D. Brown, Joplin, MO, argued, for appellant.

Bruce Farmer, Jefferson City, MO, argued (Barbara Michelle Ward, on the brief), for appellees.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

PER CURIAM.

Vance Roy Clark, a Missouri inmate, appeals the district court's order granting summary judgment in favor of the defendants in this 42 U.S.C. § 1983 action. We affirm.

On June 23, 1992, pursuant to an order from Michael Groose, Superintendent of the Jefferson City Correctional Center, Clark was placed in Temporary Administrative Segregation Confinement (TASC). Separate boxes were marked on the TASC form indicating that Clark was being placed in temporary administrative segregation because of a "serious wrongdoing" he was observed to have committed, the existence of an "immediate security risk," and the "urgent need" to separate him for his safety and that of the other inmates. Appellant's App. at 2. On June 29, 1992, Clark was brought before an Adjustment Board, which cited a pending first-degree murder charge as the reason for Clark's placement in temporary administrative segregation. A week later a classification team heard Clark's case and confirmed the Adjustment Board's finding that Clark was placed in TASC because of a pending first-degree murder charge.

Clark argues that (1) he was impermissibly placed in administrative segregation for punitive reasons; (2) the district court erred in refusing to disclose certain *in camera* documents; and (3) he was treated disparately in that he was held in administrative segregation when other inmates, who also had pending first-degree murder charges, were released into the general prison population.

 It is well settled that an inmate is entitled to certain due process rights prior to the imposition of punishment for past misconduct. *Wolff v. McDonnell,* 418 U.S. 539, 564–70, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974); *Brown–El v. Delo,* 969 F.2d 644, 647 (8th Cir.1992). Thus, an inmate facing disciplinary proceedings is entitled to, among other things, advance written notice of the claimed misconduct and a hearing at which he may call witnesses and present documen-

tary evidence. *Wolff,* 418 U.S. at 562–67, 94 S.Ct. at 2978–80. However, provided the reasons for segregation are not punitive, an inmate may be placed in administrative segregation without a hearing,[1] unless a statute creates a liberty interest for the prisoner. *Hewitt v. Helms,* 459 U.S. 460, 474–76, 103 S.Ct. 864, 872–77, 74 L.Ed.2d 675 (1983); *Brown–El,* 969 F.2d at 647; *Haley v. Groose,* 873 S.W.2d 221, 223 (Mo.1994) (en banc). A state statute creates such a liberty interest if it uses " 'mandatory language in connection with particularized substantive standards or criteria that significantly guide administrative decisions.' " *Haley,* 873 S.W.2d at 223 (quoting *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871).

■ Under Missouri's relevant statutory provision, Mo.Ann.Stat. § 217.375.1,[2] the chief prison administrator's decision to place a prisoner in administrative segregation is discretionary. Therefore, "[b]y not using mandatory language in § 217.375.1, the General Assembly does not give [an inmate] a liberty interest in his initial placement in protective custody." *Id.* Under these circumstances, an inmate is entitled only to an informal, nonadversary review of the information supporting his transfer to administrative segregation within a reasonable time after being confined in order for due process to be satisfied. *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871–72.

We review *de novo* a district court's grant of summary judgment. *Sperry v. Bauermeister, Inc.,* 4 F.3d 596, 597 (8th Cir.1993). We find no evidence in the record that supports Clark's contention that he was placed in administrative segregation for punitive reasons. Clark relies on the fact that the TASC form listed a "serious wrongdoing" (an infraction that ordinarily would require a hearing) among the reasons he was assigned to administrative segregation when in fact he committed no wrongdoing, and information he received from his attorney that the State's prosecutor called Groose and asked that Clark be put in administrative segregation to impede his access to law books and legal materials.

■ Because the parties agree that that portion of the TASC form indicating that Clark was segregated because of a serious wrongdoing was marked in error, we find no merit to Clark's argument that he was denied the due process protections normally afforded inmates charged with disciplinary violations. The other listed reasons for Clark's segregation, *e.g.,* the presence of an immediate security risk and the urgent need to separate Clark from the other inmates, are consistent with the classification team's finding that Clark was placed in TASC because of a pending first-degree murder charge. These listed reasons are consistent as well with information contained in *in camera* documents submitted to the district court which justify Groose's decision to place Clark in administrative segregation. We have reviewed the *in camera* material and, because of its sensitive nature, find that the court did not err in refusing to disclose its contents to Clark. We find no evidence in the record to support Clark's contention that he was placed in administrative segregation for the purpose of hindering his access to law books and legal materials.

■ Clark's argument that his equal protection rights were violated because he continued to be confined in administrative segregation when other inmates, who also had pending first-degree murder charges, were released into the general prison population is

---

**1.** We note that prison officials cannot escape the procedural requirements of *Wolff* by labeling an inmate's segregation "administrative" when the reasons for the segregation would ordinarily entitle the inmate to the full protections of *Wolff.* The *reason* given by prison officials for segregating an inmate, not the label attached to the segregation, is what guides our analysis in cases such as this.

**2.** Section 217.375.1 provides:

When an offender is an immediate security risk, or ... is in urgent need to be separated from others for his own safety or that of others, or for the security and good order of the correctional facility, the chief administrative officer of the correctional facility or his designee may immediately place the offender in an administrative segregation unit which shall be situated so that the segregation of such offender from the other offenders ... is complete. A review hearing shall be held concerning the incident within five working days.

also without merit. Clark does not claim that prison officials treated him differently due to any suspect classification. Thus, he must prove that the distinction between himself and the other inmates was not reasonably related to some legitimate penological purpose. *See Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987). Both the information contained in the *in camera* material and Clark's pending first-degree murder charge justify Groose's decision to place Clark in administrative segregation. Therefore, Clark is not similar in every relevant respect to the other inmates who were released into the general prison population.

The judgment of the district court, accordingly, is affirmed.